**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Jon Weiss** (State Bar No. 015350)
Direct Dial: 602.262.5382
Direct Fax: 602.734.3860
Email: jweiss@lrrc.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Interrelated Financial Services, Inc., | No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Glencore Ltd.; and Chemoil Corporation, | |
| Defendants. | |

Plaintiff, Interrelated Financial Services, Inc., for its Complaint, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Interrelated Financial Services, Inc. ("IFS"), is an Arizona corporation that offers various accounting services, including tax planning services, to businesses. IFS' principal offices are located in Paradise Valley, Arizona. IFS specializes in filing state and federal environmental and excise tax returns for companies engaged in the petroleum industry.

2. Defendant, Glencore Ltd. ("Glencore"), is a U.S. subsidiary or division of Glencore PLC with its principal offices located in Stamford, Connecticut. Glencore is an importer and supplier of petroleum products.

3. Defendant, Chemoil Corporation ("Chemoil"), is a wholly-owned subsidiary of Glencore with its principal offices located in San Francisco, California.

2010601210_1

Chemoil is, upon information and belief, a California corporation engaged in the business of storing and selling petroleum products, including but not limited to bunker fuels, ethanol, gasoline blend stocks, clear and dyed diesel fuels, and bio-diesel fuels. Chemoil and Glencore are together referred to as "Defendants."

4. This Court has jurisdiction over this civil action, under 28 U.S.C. §1332(a). The parties to this civil action are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this judicial district under 28 U.S.C. §§1391(b)(2) and (b)(3).

## GENERAL ALLEGATIONS

6. IFS has provided various consulting and accounting services to Chemoil over the years, including filing claims for duty drawback on Chemoil's importation of petroleum products and reviewing and correcting Chemoil's federal excise tax returns.

7. In May 2015, Rob Harrison, Tax Manager of Glencore ("Harrison"), informed Neil Baskin, CPA and principal of IFS ("Baskin"), that the IRS had assessed Chemoil a federal excise tax penalty and interest for the fourth quarter of 2014 ("4Q 2014"). Harrison also informed Baskin that Chemoil's Tax Manager had failed to remit Chemoil's federal excise tax payments for 4Q 2014 when such taxes were legally due.

8. Baskin offered to review Chemoil's 4Q 2014 Quarterly Federal Excise Tax Return (IRS Form 720) to verify the accuracy of Chemoil's return and to determine whether IFS might be able to persuade the IRS to abate the penalty.

9. Harrison, on behalf of Defendants, verbally accepted Baskin's offer to review Chemoil's 4Q 2014 return and directed a Chemoil Tax Department Accountant, to forward Baskin Chemoil's 4Q 2014 Form 720, as filed, plus supporting schedules and evidence of Chemoil's payments to the IRS for the quarter.

2010601210_1                                                                 2

10. On or about June 3, 2015, Chemoil executed an IRS Form 2848, Power of Attorney and Declaration of Representative, designating Baskin as Chemoil's representative "to receive and inspect my [*i.e.,* Chemoil's] confidential tax information and to perform acts that I can perform with respect to the tax matters described below." Chemoil's Form 2848 described the following matters: "Excise Taxes," Tax Form Nos. "720, 6627, 8849," and the years "2013-present" (*i.e.,* to June 3, 2015).

11. Chemoil's 4Q 2014 tax return involved federal excise taxes imposed on: (1) gallons of imported petroleum products (*i.e.,* the "Oil Spill Tax"); (2) gallons of diesel fuel removed from, or sold across, a "terminal rack"; and (3) gallons of "dyed" diesel fuel removed from, or sold across, a terminal rack (*i.e.,* the "Lust Tax," or "Leakage From Underground Storage Tank" tax).

12. In reviewing Chemoil's original 4Q 2014 Form 720, Baskin discovered that Chemoil had made numerous filing errors.

13. Baskin prepared, and assisted Chemoil in filing, an amended federal excise tax return for 4Q 2014 (IRS Form 720X) correcting Chemoil's earlier filing errors.

14. Chemoil filed the amended 4Q 2014 return as prepared by Baskin on or about September 22, 2015.

15. As a consequence of Baskin's amended 4Q 2014 filing, the IRS reduced Chemoil's federal excise tax liability for the quarter. The IRS also reduced the penalty it had imposed on Chemoil by 10% of the correct amount of tax due and owing. These adjustments resulted in significant tax savings to Chemoil for the quarter, plus interest on the refund amount until paid by the IRS.

16. Because of Chemoil's mistakes in filing its 4Q 2014 federal excise tax return, Baskin suggested to Harrison that IFS examine Chemoil's excise tax returns for the prior quarters.

2010601210_1                                 3

17. Harrison informed Baskin that Chemoil was under an IRS audit with respect to Chemoil's federal excise tax filings for the first quarter 2013 (1Q 2013), second quarter 2013 (2Q 2013) and third quarter 2013 (3Q 2013).

18. On or about September 23, 2015, Harrison sent Baskin an email indicating that Cheryl Driscoll, Chemoil's Chief Financial Officer ("Driscoll"), was "open to having you review the prior qtr [sic] returns as well depending on what you charge to do so." A copy of this email is attached hereto as **Exhibit 1**.

19. On October 5, 2015, Harrison responded to an email from Baskin inquiring whether Driscoll had authorized a review of Chemoil's returns for prior quarters. Harrison's reply, a copy of which is attached hereto as **Exhibit 2**, states:

> Cheryl said yes to having you go back and look at prior qtrs. I think you said your fee would be 20% for savings on Q4 2014 (the qtr that you have already done) and 10% for the other qtrs (Q1-Q3 2013). As you know, Chemoil is under audit for Q2 and Q3 for 2013.

20. Baskin accepted Harrison's offer orally over the telephone.

21. Harrison instructed Baskin to focus on 2Q 2013 and 3Q 2013, and Baskin immediately began an examination of Chemoil's federal excise tax filings for 2Q 2013 and 3Q 2013, including Forms 720, 720X, and 6627, as originally filed by Chemoil.

22. Baskin understood that Harrison, on behalf of Defendants, had engaged him: to examine Chemoil's federal excise tax returns for 2Q 2013 and 3Q 2013 as filed by Chemoil, including Chemoil's supporting schedules and detail; to independently verify Chemoil's federal excise tax liability for 2Q 2013 and 3Q 2013; to re-calculate Chemoil's correct federal excise tax liability for 2Q 2013 and 3Q 2013, if necessary; to prepare detailed schedules and analyses supporting Chemoil's federal excise tax returns for 2Q 2013 and 3Q 2013, if necessary; and to negotiate with the IRS in closing out its audit, if necessary.

23. Baskin understood that every line item on Chemoil's federal excise tax returns for 2Q 2013 and 3Q 2013 was under audit by the IRS, and that Harrison and his staff had insufficient time to deal with the IRS on the audit. Harrison expressed to Baskin his desire that Baskin work directly with the IRS to close out the IRS audit for these two quarters as soon as possible.

24. Harrison advised Baskin that Chemoil had previously received complete refunds from the IRS of all federal excise tax credits allowed on Chemoil's sales of biodiesel mixtures for 2Q 2013 and 3Q 2013. Harrison did not know the amounts of such refunds, and Harrison advised Baskin that he did not believe any additional biodiesel credits were due Chemoil for the two quarters under audit.

25. In an email dated December 1, 2015, Harrison advised Baskin that he thought Chemoil would owe, due to errors in Chemoil's original 720 filings for 2Q 2013 and 3Q 2013, additional federal excise taxes of approximately $1 million. Harrison assured Baskin that "on the biodiesel tax credit side we [Chemoil] are all check[ed] out aside from one duplicated inv[oice]," and that Chemoil's error in reporting sales of clear and dyed diesel fuels and in paying Oil Spill Tax "was the only open item on audit."

26. In determining Chemoil's correct federal excise tax liability for purposes of closing out the IRS audit of Chemoil's 2Q 2013 and 3Q 2013 returns, Baskin examined the underlying documentation related to Chemoil's importation and sale of petroleum products during 2Q 2013 and 3Q 2013, including Chemoil's inventories of petroleum products, and its sales and "liftings" of diesel and biodiesel fuel products across-the-rack from Chemoil's storage facilities and terminals.

27. Baskin discovered numerous errors in Chemoil's federal excise tax returns for 2Q 2013 and 3Q 2013, and uncovered certain errors and omissions in Chemoil's underlying documentation.

28. Baskin independently recalculated Chemoil's federal excise tax liability, correcting the errors in Chemoil's original returns and correctly accounting for all refunds of biodiesel mixture credits that were due and owing. Baskin determined that Chemoil was entitled to a net refund for 2Q 2013 of approximately $33 million and to a net refund for 3Q 2013 of approximately $6 million.

29. Baskin reported his initial findings to Harrison on or about December 7, 2015. Harrison confirmed Baskin's "10% of savings" compensation arrangement by making a joking reference to splitting the savings 9% to Baskin and 1% to Harrison.

30. Baskin prepared detailed schedules and analyses on Chemoil's behalf for 2Q 2013 and 3Q 2013, which Chemoil filed with the IRS on or about December 14, 2015.

31. On or about December 17, 2015, the IRS sent its audit adjustments for 2Q 2013 and 3Q 2013 to Harrison and presented its final audit work papers to Harrison on or about December 23, 2015. Harrison forwarded copies of the IRS adjustments to Baskin.

32. On or about January 25, 2016, the IRS closed out its audit of Chemoil for 2Q 2013 and 3Q 2013.

33. Based on Chemoil's amended federal excise tax returns for 2Q 2013 and 3Q 2013, which Baskin corrected for Chemoil's errors in its prior filings with respect to Oil Spill Tax, its sales of clear and dyed diesel fuels, and its omission of biodiesel mixture credits, the IRS granted Chemoil a net refund for 2Q 2013 of $33,341,242.58, and a net refund of $6,102,586.36 for 3Q 2013.

34. As a direct consequence of IFS' services in expeditiously closing out the IRS audits of Chemoil for 2Q 2013 and 3Q 2013, Chemoil's tax savings for 2Q 2013 and 3Q 2013 were no less than $39,944,382.90. Instead of erroneously paying

additional federal excise taxes of approximately $1 million for 2Q and 3Q 2013, Chemoil received refunds totaling $39, 944,382.90.

35.     Defendants owe IFS 10% of the total savings for 2Q and 3Q 2013, or $3,944,383, and 20% of the total savings for 4Q 2014, or $40,635.32.

36.     On or about January 12, 2016, the Chief Financial Officer of Glencore, Cheryl Driscoll, stated to Baskin that she "had known about the biodiesel mixtures credit," and that she would not pay IFS based on a percentage of Chemoil's federal excise tax savings related to biodiesel mixture credits for 2Q and 3Q 2013.

37.     No one from Glencore or Chemoil had ever communicated to IFS prior to January 12, 2016, that excise tax refunds related to biodiesel mixture credits would be excluded from the calculation of Chemoil's federal excise tax savings for 2Q or 3Q 2013.

38.     On or about May 23, 2016, IFS mailed to Glencore IFS' invoices for professional services rendered in correcting Chemoil's 2Q and 3Q 2013 federal excise tax returns, in closing out the IRS audits of Chemoil for 2Q and 3Q 2013, and in correcting Chemoil's 4Q 2014 excise tax return.  Per its contract with Glencore, IFS charged 20% of Chemoil's federal excise tax savings for 4Q 2014, ($40,635.32) and 10% of Chemoil's federal excise tax savings for 2Q and 3Q 2013 (a total of $3,944,382.90).

39.     Neither Glencore nor Chemoil has paid IFS anything for the professional services IFS rendered in correcting Chemoil's 4Q 2014 and its 2Q and 3Q 2013 federal excise tax returns, and in closing out the IRS audits of Chemoil for 2Q and 2Q 2013.

## COUNT I (BREACH OF CONTRACT)

40.     IFS restates by reference the allegations of paragraphs 1 through 39 of this Complaint.

41. The parties entered into an agreement for IFS to provide professional services in consideration for the payment by Defendants to IFS of 20% of Chemoil's federal excise tax savings for 4Q 2014, and 10% of Chemoil's federal excise tax savings for 2Q and 3Q 2013. More specifically, Defendants engaged IFS to review and correct Chemoil's 4Q 2014 federal excise tax return, to review and correct Chemoil's 2Q and 3Q federal excise tax returns, and to close out as expeditiously as possible the IRS audits of Chemoil's federal excise tax returns for 2Q and 3Q 2013.

42. IFS has fully and capably performed the professional services that Defendants engaged IFS to perform.

43. Defendants have breached the contract with IFS by failing to pay IFS the contract price Defendants agreed to pay. As shown by Exhibits 1 and 2 hereto, the contract price is based on agreed commission percentages of Chemoil's excise tax savings for the quarters at issue.

44. As a result of Defendants' breach of contract, IFS has been damaged in an amount no less than $3,985,018.22, plus interest, in a total amount to be proven at trial. IFS is entitled to judgment against Defendants for breach of contract and for payment of the full contract price based on the agreed commission percentages of tax savings.

### COUNT II (ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT)

45. IFS restates by reference the allegations of paragraphs 1 through 44 of the Complaint.

46. IFS is entitled to judgment against Defendants for breach of contract and for payment of the full contract price based on the agreed commission percentages of Chemoil's tax savings. In the alternative, IFS is entitled to compensation from Defendants under the equitable doctrine of unjust enrichment. As shown more specifically by the allegations of paragraphs 1 through 39 of this Complaint:

    a. Defendants have been unjustly enriched at the expense of IFS;

    b. IFS rendered services that benefitted Defendants, *viz.,* preparation and filing of correct Forms 720X for 4Q 2014 preparation of detailed schedules and analyses supporting Chemoil's federal excise tax returns for 2Q 2013 and 3Q 2013, and the expeditious closure of the IRS audits of Chemoil for 2Q and 3Q 2013, which resulted in significant tax savings to Defendants for the quarters at issue;

    c. Defendants have retained the benefits conferred upon them by IFS without payment; and

    d. IFS has conferred benefits upon Defendants under circumstances that render it grossly inequitable for Glencore and/or Chemoil to retain such benefits without payment.

    e. IFS is entitled to recover quantum meruit damages from Defendants in an amount to be proven at trial.

**WHEREFORE**, IFS requests judgment in its favor and against Glencore and Chemoil, jointly and severally, as follows:

1. Compensatory damages of $3,985,018.22 on its breach of contract claim;
2. Alternatively, compensatory damages in an amount to be proven at trial on IFS' claim of unjust enrichment;
3. IFS' costs and attorneys' fees, including under A.R.S. § 12-341.01;
4. Pre and post-judgment interest at the highest available rate(s); and
5. All such other legal or equitable relief as the Court deems just and appropriate under the circumstances.

2010601210_1

9

DATED this 18th day of July, 2016.

          LEWIS ROCA ROTHGERBER CHRISTIE LLP


          By: /s/ *Jon Weiss*
              Jon Weiss
          Attorneys for Plaintiff

2010601210_1

10